**KOLLER LAW LLC**
David M. Koller, Esquire (Pa 90119)
Jordan D. Santo, Esquire (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMEN CUPO,** | : | **Civil Action No. 26-8048** |
| **Plaintiff,** | : | |
| **v.** | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| **RPM LIVING, LLC,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Carmen Cupo (hereinafter "Plaintiff"), by and through his attorney, brings this civil matter against Defendant, RPM Living, LLC (hereinafter, "Defendant"), alleging he was subject to unlawful violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and public policy, and avers and alleges as follows:

**<u>THE PARTIES</u>**

1. Plaintiff is an adult individual domiciled in Souderton, PA.
2. Defendant RPM Living, LLC is a full-service real estate firm with a location at 1001 Towamencin Avenue, Lansdale, PA 19446, a principal address and corporate headquarters located at 5508 Park Crest Drive, Suite 320, Austin, TX 78731, and with Cogency Global Inc. serving as its commercial registered office provider in the Commonwealth of

Pennsylvania.

3. At all relevant times hereto, Defendant employed the requisite number of employees under the applicable statutes and was a covered entity.

4. At all times hereto, Defendant employed managers, supervisors, agents and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decision, these individuals engaged in the practice of treatment which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents and employees who acted directly or indirectly in the interest of the employer. In so acting these individuals engaged in the pattern and practice of treatment which forms the basis of the Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in the judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.
13. Plaintiff filed a timely written Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination and retaliation against Defendant.
14. The Charge was assigned a Charge Number of 530-2026-07706 and Plaintiff requested the charge be dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") and that Notice is dated July 22, 2026.
16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.
17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.
18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about March 11, 2026, Defendant hired Plaintiff in the position of Maintenance Supervisor.

21. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF SUFFERED A WORKPLACE INJURY

22. On or about April 23, 2026, while performing duties within the course and scope of his employment, Plaintiff fell from a ladder and injured his knee.

23. Plaintiff immediately reported the injury in person to Kelly Coleman, Property Manager, and filed a workers' compensation claim for his workplace injury.

24. Thereafter, Plaintiff sought treatment at AFC Urgent Care Souderton.

25. The treating provider observed that Plaintiff was experiencing significant pain, prescribed medication, instructed him not to work on April 24, 2026, and referred him to an orthopedic specialist for further evaluation.

## PLAINTIFF RETURNED TO WORK AND REQUESTED REASONABLE ACCOMMODATIONS

26. On or about April 27, 2026, Plaintiff returned to work.

27. Upon his return, Plaintiff informed Coleman of his urgent care treatment and advised that he was continuing to experience significant pain.

28. Plaintiff explained further that, although he remained able to perform the duties of his Maintenance Supervisor position, he was unable to continue performing the more physically demanding duties of the Maintenance Technician position, which Defendant had temporarily

assigned to him because the position remained vacant.

**PLAINTIFF INFORMED COLEMAN THAT HE HAD AN UPCOMING APPOINTMENT WITH AN ORTHOPEDIC SPECIALIST AND WOULD BRING IN A DOCTOR'S NOTE DETAILING HIS MEDICAL RESTRICTIONS**

29. During this conversation, Coleman demanded that Plaintiff provide a doctor's note stating that he was unable to perform the Maintenance Technician job duties.

30. Plaintiff explained that he had not yet been evaluated by the orthopedic specialist and did not have documents specifying his restrictions as a result.

31. Plaintiff notified Coleman that he was scheduled for an appointment with an orthopedic specialist on May 5, 2026, and would obtain the requested documentation at that time.

**DEFENDANT TERMINATED PLAINTIFF**

32. On or about April 28, 2026, the day after Plaintiff returned to work and reported his injury-related limitations, and only five (5) days after the workplace injury itself and filing a workers' compensation claim, Zach Stone, Regional Manager, Orlando Munoz, Regional Maintenance Manager, and Coleman met with Plaintiff and terminated his employment.

33. Stone informed Plaintiff that he was terminated for an alleged company policy violation.

34. Stone, Munoz and Coleman did not identify the specific policy allegedly violated, did not describe the conduct allegedly constituting the violation, and did not provide any documentation.

35. Importantly, Plaintiff had never been disciplined and had no history of performance or conduct issues prior to his termination.

**PLAINTIFF WAS DIAGNOSED WITH A DISABILITY**

36. On May 5, 2026, Plaintiff was examined by an orthopedic surgeon, who diagnosed him with advanced arthritis in his knee that had been materially aggravated by the April 23, 2026

workplace injury.

37. Advanced arthritis is a serious medical condition that is considered to be a disability under the ADA and the PHRA.

38. The major life activities affected by advanced arthritis include, but are not limited to, walking, standing, carrying and climbing.

**DEFENDANT TERMINATED PLAINTIFF IMMEDIATELY AFTER BECOMING AWARE OF HIS PHYSICAL LIMITATIONS DUE TO HIS WORKPLACE INJURY**

39. Defendant had actual knowledge of Plaintiff's workplace injury and physical limitations no later than April 27, 2026, when Plaintiff returned to work and reported his condition directly to Coleman.

40. Nevertheless, Defendant terminated Plaintiff's employment the following day.

41. Plaintiff requested reasonable accommodations for his physical limitations by informing Defendant that he could continue performing his Maintenance Supervisor duties but could not perform the more physically demanding duties of the vacant Maintenance Technician position.

42. Defendant terminated Plaintiff's employment without engaging in the interactive process or exploring reasonable accommodations.

43. Defendant discriminated against Plaintiff due to his disability and/or perceived disability, regarded him as disabled, failed to engage in the interactive process, failed to provide a reasonable accommodation, and terminated his employment in violation of the ADA and the PHRA.

44. In addition, Defendant retaliated against Plaintiff for filing a workers' compensation claim in violation of public policy.

45. Defendant's acts and/or omissions were willful or with reckless disregard to Plaintiff's federal statutory rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

46. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

47. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

48. Plaintiff was qualified to perform the job.

49. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

50. Circumstances indicated that Plaintiff's disability and/or perceived disability was the reason for the adverse employment action.

51. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

52. Plaintiff's disability and/or perceived disability motivated Defendant's decision to take adverse actions against Plaintiff.

53. The purported reason for Defendant's decision is pretextual.

54. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

55. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages

as set forth herein.

56. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

57. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

58. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

59. Plaintiff was qualified to perform the job.

60. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

61. Circumstances indicated that Plaintiff's disability and/or perceived disabilty was the reason for the adverse employment action.

62. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

63. Plaintiff's disability and/or perceived motivated Defendant's decision to terminate Plaintiff.

64. The purported reason for Defendant's decision is pretextual.

65. The above actions by Defendant also constitute a failure to accommodate and a failure to

engage in the required interactive process.

66. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

67. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

68. Plaintiff engaged in activity protected by the ADA as alleged herein.

69. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

70. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

71. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

72. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

73. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

74. Plaintiff engaged in activity protected by the PHRA as alleged herein.

75. Defendant took adverse employment actions against Plaintiff, including, but not limited to,

termination.

76. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

77. Defendant terminated Plaintiff's employment as a result of his protected activity.

78. As a result of Defendant's unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – WRONGFUL TERMINATION**
**IN VIOLATION OF COMMON LAW**

79. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

80. Plaintiff was an at-will employee with Defendant.

81. Defendant terminated Plaintiff in retaliation for filing a worker's compensation claim.

82. A common law cause of action for wrongful discharge of an at-will employee exists as such a discharge is a violation of the public policy of the Commonwealth of Pennsylvania.

83. Defendant's discharge of Plaintiff in retaliation for filing a worker's compensation claim is wrongful and in violation of the public policy of the Commonwealth of Pennsylvania.

84. As a result of Defendant's wrongful discharge, Plaintiff has suffered harm as alleged herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Carmen Cupo, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for his adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW LLC**

Date: October 20, 2026

By: */s/ David M. Koller*

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215)-545-8917
F: (215)-575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*